**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

JULIE A. SU,
Acting Secretary of the United States
Department of Labor,

      Plaintiff,

  v.

PROTECTIVE SERVICE OFFICERS
UNITED,

      Defendant.

<u>Serve on</u>:

   Justin P. Keating, Esq.
   Beins, Axelrod & Keating, P.C.
   1800 Diagonal Road, Suite 600
   Alexandria, Virginia 22314
   Jkeating@beinsaxelrod.com

     *Counsel for Defendant*

Case No.

## <u>COMPLAINT</u>

The United States of America, on behalf of Julie A. Su, the Acting Secretary of the United States Department of Labor (the "<u>DOL</u>" or "<u>Plaintiff</u>"), by and through undersigned counsel, hereby brings this civil complaint (the "<u>Complaint</u>") against the above-captioned defendant, the Protective Service Officers United (the "<u>PSOU</u>" or "<u>Defendant</u>"), and in support thereof states as follows:

**I.    NATURE OF THIS ACTION**

1.    Plaintiff brings this action is brought under Title IV of the Labor-Management Reporting and Disclosure Act of 1959, *see* 29 U.S.C. §§ 481-83 ("<u>the Act</u>"), for a judgment from this Court: (i) declaring that the September 30, 2022 election of union officers conducted by PSOU for the offices of President and three Trustees is void, (ii) directing Defendant to conduct a new election

for these offices under Plaintiff's supervision and in accordance with all controlling legal authorities, and (iii) issuing all other appropriate and necessary relief.[1]

## II.   PARTIES

2.      Plaintiff is Julie A. Su, the duly appointed Acting Secretary of DOL.

3.      Plaintiff is authorized to bring this action under section 402(b) of Title IV of the Act, *see* 29 U.S.C. § 482(b).

4.      Defendant is PSOU, which is, and at all times relevant to this action has been, an unincorporated association residing and maintaining its principal office within the city of Fort Washington, Maryland, and is thus within the jurisdiction of this Court.

## III.   JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1345 and 29 U.S.C. § 482(b). As detailed in this Complaint, all administrative requirements have been exhausted. *Infra* ¶¶ 20, 50-58, 61, 64.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 482(b).

## IV.   FACTUAL ALLEGATIONS

7.      Defendant is, and at all times relevant to this action has been, an independent, local labor organization engaged in an industry affecting commerce within the meaning of sections 3(i), 3(j) and 401(b) of the Act, *see* 29 U.S.C. §§ 402(i), 402(j), 481(b).

8.      Members of PSOU are employed by the following companies: Triple Canopy, Allied Universal Services, Elite, White Stone Group, and BTI Security.

9.      Defendant's members work at three worksites: the White Oak campus of the U.S. Food and Drug Administration ("FDA White Oak") worksite; the Federal Emergency Management

---

1       This Complaint uses double citations when citing to the Act, which is common among federal courts that have dealt with this law. Thus, citations to the Act will include both a citation to the Act's sections as well as a corresponding citation to the United States Code.

Agency ("FEMA") worksite; and the United States Citizenship and Immigration Service ("USCIS") worksite.

10.     Over 200 PSOU members work at the FDA White Oak worksite.

11.     Approximately PSOU 40 members work at the FEMA worksite.

12.     Approximately PSOU 80 members work at the USCIS worksite.

13.     On September 30, 2022, Defendant conducted an election of officers by voting[2] site (the "Election").[3]

14.     That Election was subject to the provisions of Title IV of the Act, *see* 29 U.S.C. §§ 481-83.

15.     At the time of the Election, Defendant had approximately 400 active members who served as security guards.

16.     Leading up to the Election, Defendant distributed an election notice to its members on September 11, 2022 (the "Election Notice").

17.     The Election Notice stated that voting would occur at three locations: (1) the White Oak Library, located at 11701 New Hampshire Ave in Silver Spring, Maryland; (2) the FEMA Caucus Conference Room, located at 500 C Street in Washington, DC; and (3) the USCIS offices, located at 5600 Capital Gateway Drive in Camp Springs, Maryland.

18.     The Election Notice stated that the voting hours for all locations were from 10:30 a.m. to 4:30 p.m.

19.     On or about September 27, 2022, three days before the Election, the PSOU President, Chrissandra Jones ("Jones"), texted all the candidates and asked if they agreed to allow voting

---

[2]     Documents from PSOU and the administrative proceedings in this matter use the terms "poll", "polling", "vote", and "voting" interchangeably. So too does this Complaint as there is no apparent difference in the meaning of the terms in this particular context.

[3]     That is, voting took place at an in-person voting sites or locations, as opposed to being conducted by mail.

attendant Ervin Covington ("Covington") to walk the ballot box around to individual guard stations at the FDA White Oak worksite on the morning of the Election so that members could more easily vote.

20.     The complainant in this matter, Robin Gregory (the "Complainant" or "Gregory"), responded to the text that she did not agree to allow Covington to walk the ballot box around the FDA White Oak worksite on election day.

21.     At some point between September 27, 2022 and September 30, 2022, Jones instructed Covington to carry the ballot box around the FDA White Oak worksite during the Election.

22.     Jones did not tell Gregory that a final decision had been made to permit Covington to walk the ballot box around the FDA White Oak worksite on election day.

23.     Gregory never agreed to have Covington carry the ballot box around the FDA White Oak worksite on election day.

24.     Jones did not seek approval from the PSOU Executive Board[4] to have Covington carry the ballot box around the FDA White Oak worksite on election day.

25.     Defendant did not provide written notice to its members that Covington would be walking the ballot box around the FDA White Oak worksite on election day.

26.     On or about September 27, 2022, Jones instructed the voting attendants for all the voting locations to open the polls beginning around 5:00 a.m. on election day.

27.     Jones did not seek approval from the PSOU Executive Board to change the voting hours from those stated in the Election Notice.

28.     Defendant did not provide written notice to its members that the polls would be open earlier than the times stated in the Election Notice.

---

4       Established pursuant to the bylaws, the PSOU Executive Board is an internal union governance board responsible for, *inter alia*, setting the time and place of the election and adjudicating election complaints.

29.     On the day of the Election, the polls at the FEMA voting site opened prior to 10:30 a.m.

30.     On the day of the Election, the polls at the USCIS voting site opened prior to 10:30 a.m.

31.     On the day of the Election, Covington and another member, Adrian Petrus ("Petrus"), began assembling the ballot box at the FDA White Oak worksite around 5:00 a.m.

32.     Covington and Petrus began walking the ballot box around the FDA White Oak worksite between 5:00 a.m. and 6:00 a.m. on September 30, 2022.

33.     Neither Gregory nor her election observer, Jeffrey Williams ("Williams"), were informed that the polls would open prior to the time stated in the Election Notice.[5]

34.     Neither Gregory nor Williams was present at the opening of the polls.

35.     Neither Gregory nor Williams witnessed the assembly of the ballot box.

36.     After Covington and Petrus walked around with the ballot box, Covington took the box to Building 22 on the FDA White Oak worksite around 8:30 a.m., where he stayed with the box until about 9:30 a.m.

37.     Covington then brought the box to the White Oak Library, where voting resumed at around 11:00 a.m.

38.     The ballot box was walked to individual guard stations during the first and second shift[6] at FDA White Oak worksite, but not during the third shift.

---

5       Section 401(c) of the Act permits candidates to "have an observer at the polls and at the counting of the ballots." Thus, an observer is effectively someone who is responsible for observing voting and noting any irregularities.

6       At times, PSOU refers to "shifts" as "reliefs." There is no apparent distinction as both terms appear to refer to times during which guards are on duty. Accordingly, any use of the word "shift" in this Complaint necessarily includes the meaning of "relief".

39.     Various members were not given the option of voting at their workstation while on duty, including (but not limited to) those members working during the third shift at guard stations at the FDA White Oak worksite.

40.     Seventy-four (74) members voted onsite at the FDA White Oak worksite through the roaming ballot box that Covington and Petrus walked around during the first and second shift.

41.     Twenty-one (21) members voted at the White Oak Library, the voting location that had been designated in the notice provided to all union members.

42.     The 74 voters who voted onsite at the FDA White Oak worksite made up 54% of the total votes cast in the Election.

43.     The voter participation rate was higher among those members working during the first and second shift at the FDA White Oak worksite than the voter participation rate among those members working at other worksites.

44.     The voter participation rate was also higher among those members working during the first and second shift at the FDA White Oak worksite than the voter participation rate among those members working during the third shift at the FDA White Oak worksite.

45.     The contested races in the Election were for the offices of President and three Trustee positions.

46.     The margin of victory in the President's race was 11 votes.

47.     The margin of victory in the Trustees' race was 10 votes.[7]

48.     Approximately 400 members were eligible to vote at the time of the Election.

---

7       This 10-vote-margin for the Trustees' race—which, again, was for three spots—is the margin between the third highest vote getter, Jacqueline Harrison ("Harrison") and the next candidate who did not secure a trustee position, Babatunde Oyelohunnu ("Oyelohunnu"). For context, the margin between Harrison and the second highest vote recipient, Tarek Taylor ("Taylor") was 7 votes, and the margin between Taylor and the top vote recipient, Tony Diggs ("Diggs") was 28 votes. Of note, because this Complaint alleges that all members who did not vote (approximately 264 members) count towards these totals, all of these Trustee positions would be affected.

49.     Yet, there were only 136 votes counted as cast in the Election.

50.     Section 8(G)(2) of the PSOU bylaws states that post-election protests concerning the conduct of the election must be submitted to the PSOU Executive Board via the Treasurer within 72 hours of the election.

51.     By letter to the PSOU Executive Board, dated October 3, 2022, Gregory protested the Defendant's September 30, 2022 Election of officers.

52.     Gregory's allegation that PSOU failed to notify members of the change in voting hours and location from what was stated in the Election Notice was timely filed with PSOU.

53.     Gregory's allegation that PSOU improperly allowed Covington and Petrus to walk the ballot box around the FDA White Oak worksite was timely filed with PSOU.

54.     At the time Gregory protested the Election, she was a member in good standing of PSOU.

55.     Defendant did not respond to Gregory's protest.

56.     Having exhausted remedies available without obtaining a final decision within three calendar months after their invocation, Gregory filed a timely complaint with the Secretary of Labor on January 11, 2023, within the one calendar month required by section 402(a)(2) of the Act, *see* 29 U.S.C. § 482(a)(2).

57.     Pursuant to section 601 of the Act, *see* 29 U.S.C. § 521, and in accordance with section 402(b) of the Act, *see* 29 U.S.C. § 482(b), the Plaintiff investigated the complaint and, as a result of the facts shown by his investigation, found probable cause to believe that: (1) violations of Title IV of the Act, *see* 29 U.S.C. §§ 481-83, had occurred in the conduct of the Defendant's September 30, 2022 election; and (2) that such violations had not been remedied at the time of the institution of this action.

58.     By letter signed February 22, 2023, the Defendant's attorney agreed the time within which the Plaintiff may bring suit with respect to the Defendant's aforesaid election shall be extended to March 27, 2023.

## V.     CAUSES OF ACTION

### A.  Count One

59.     Plaintiff incorporates the above allegations as if fully and completely stated herein.

60.     Defendant violated section 401(e) of the Act, *see* 29 U.S.C. § 481(e), during the conduct of the Election in that it failed to mail its members notice of the new voting times at all locations and the new voting procedures and location at the FDA White Oak worksite.

61.     The violations of section 401(e) of the Act, *see* 29 U.S.C. § 481 (e), may have affected the outcome of the Defendant's Election for the offices of President and Trustee and have not been remedied by the union.

### B.  Count Two

62.     Plaintiff incorporates the above allegations as if fully and completely stated herein.

63.     Defendant violated section 401(c) of the Act, *see* 29 U.S.C. § 481(c), by failing to provide adequate safeguards to insure a fair election when it permitted two members to walk the ballot box around the FDA White Oak worksite during the first and second shifts.

64.     The violation of section 401(c) of the Act, *see* 29 U.S.C. § 481(c) may have affected the outcome of the Defendant's Election for the offices of President and Trustee and has not been remedied by the union.

## VI.    PRAYER FOR RELIEF

WHEREFORE, the United States of America, on Plaintiff's behalf, requests that this Court enter judgment in favor of Plaintiff on Counts One and Two of this Complaint, and issue an order:

> (a) declaring and vacating Defendant's election for the offices of President and Trustee as void;

(b) directing Defendant to conduct a new election for those offices identified in the Complaint under the supervision of the Plaintiff and in accordance with all controlling legal authorities;

(c) for an award to the Plaintiff for all costs associated with prosecuting this action, including but not limited to, a filing fee, as authorized by 28 U.S.C. § 2412(a)(2);

(d) for any other relief as the Court deems just and reasonable, and as the circumstances may require; and

(e) directing the Clerk of the Court to remit copies of the order to all parties and their respective counsel of record.

Dated: March 27, 2023

Respectfully submitted,

Erek L. Barron
United States Attorney

_____
Patrick G. Selwood (Bar No. 19999)
Assistant United States Attorney
United States Attorney's Office, District of Maryland
36 South Charles Street, Fourth Floor
Baltimore, Maryland, 21201
Tel: (410) 209-4892
Fax: (410) 962-2310
Email: Patrick.Selwood@usdoj.gov

*Counsel for the United States of America,*
*on behalf of Julie A. Su, the Acting Secretary of*
*the United States Department of Labor*

Of counsel:

Seema Nanda, Esq.
Solicitor of Labor
U.S. Department of Labor

Beverly Dankowitz, Esq.
Associate Solicitor
Office of the Solicitor, Civil Rights and Labor-Management Division
U.S. Department of Labor

Jeffrey Lupardo, Esq.
Counsel for Labor-Management and Civil Rights Enforcement
Office of the Solicitor, Civil Rights and Labor-Management Division
U.S. Department of Labor

Jennifer Frey, Esq.
Senior Attorney
Office of the Solicitor, Civil Rights and Labor-Management Division
U.S. Department of Labor

[Remainder of Page Intentionally Left Blank]