IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JULIE A. SU, **Acting Secretary of the U.S. Department of Labor** | * * | |
| *Plaintiff*, | * | |
| v. | * | Case No. 1:23-cv-00836-JRR |
| PROTECTIVE SERVICE OFFICERS UNITED, | * * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Julie A. Su, Acting Secretary of the United States Department of Labor ("Plaintiff" or "the "Secretary"), filed this action alleging that Defendant Protective Service Officers United violated Title IV of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 481–83. Pending before the court is Plaintiff's Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment. (ECF No. 13; the "Motion.") The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be denied.

I.   BACKGROUND

There is no dispute between the parties regarding the relevant facts:

> Defendant is, and at all times relevant to this action has been, an independent, local labor organization. Answ. at ¶ 7.2. At the time of the Election, [Defendant] members were employed as security officers at the following worksites: the White Oak campus of the U.S. Food and Drug Administration ("FDA White Oak") worksite; the Federal Emergency Management Agency ("FEMA") worksite;

and the United States Citizenship and Immigration Service ("USCIS") worksite. *Id.* at ¶ 9.

The Election was conducted via in-person voting sites and was subject to the provisions of Title IV of the LMRDA. Answ. at ¶¶ 13-14. Prior to the Election, on September 11, 2022, Defendant distributed an election notice (the "Election Notice") to its members. *Id.* at ¶ 16. That Election Notice stated that voting would occur at three locations: (1) the White Oak Library, located at 11701 New Hampshire Ave in Silver Spring, Maryland; (2) the FEMA Caucus Conference Room, located at 500 C Street in Washington, D.C.; and (3) the USCIS offices, located at 5600 Capital Gateway Drive in Camp Springs, Maryland. *Id.* at ¶ 17. The Election Notice further stated that the voting hours for all locations would be from 10:30 a.m. to 4:30 p.m. *Id.* at ¶ 18.

On the day of the Election, however, the polls at all three voting sites opened prior to 10:30 a.m.—the starting time set forth in the Election Notice. *Id.* at ¶¶ 29-32. Additionally, at some point between September 27, 2022 and September 30, 2022, [Defendant] President Chrissandra Jones ("Jones") had instructed member Ervin Covington ("Covington") to carry the ballot box around the FDA White Oak worksite during the Election. Answ[.] at ¶ 21. On the day of the Election, Covington and another member, Adrian Petrus ("Petrus"), walked the ballot box to individual guard stations at the FDA White Oak worksite starting between 5:00 a.m. and 6:00 a.m., before bringing the ballot box to the White Oak Library (one of the three polling locations listed in the Election Notice) where the voting would later resume at 11:00 a.m. *Id.* at ¶¶ 32, 36-38.

Defendant admits that it did not send a corrected election notice informing the membership that the voting hours had changed or that a roaming ballot box would be used at the FDA White Oak worksite. Answ[.] at ¶¶ 25, 28. Defendant further admits that members who were working at other times or locations were not able to vote while on duty via this roaming ballot box and were instead required to vote at the listed polling sites. *Id.* at ¶ 39.

The contested races in the Election were for the offices of President and three Trustee positions. Answ[.] at ¶ 45. At the time of the Election, approximately 400 members were eligible to vote. *Id.* at ¶ 48. There were 136 votes counted as cast in the Election. *Id.* at ¶ 49. The margin of victory in the President's race was 11 votes. *Id.* at ¶ 46. The margin of victory in the Trustees' race was 10 votes. *Id.* at ¶ 47. There were 74 members who voted onsite at the FDA White Oak worksite through the roaming ballot box, whereas there were

> 21 members who voted at the White Oak Library. *Id.* at ¶¶ 40-41. The 74 votes cast onsite at the FDA White Oak worksite made up 54% of the total votes cast in the Election. *Id.* at ¶ 42. Thus, the numbers plainly show that voter participation was higher among those members who had access to the roaming ballot box than those voting at the listed polling sites. *Id.* at ¶¶ 43-44.
>
> Observing these improprieties, Robin Gregory, a [Defendant] member, properly filed a complaint regarding these matters with the Secretary of Labor. *Id.* at ¶¶ 51-57. The Secretary investigated and now brings this action against Defendant pursuant to Section 402(b) of the Act. See 29 U.S.C. § 482(b).

(ECF No. 13-1 at p. 2–4 (citing ECF No. 4; the "Answer") (footnote omitted)); *see* ECF No. 14 at p. 3 ("The Union does not dispute any of the background facts [in Plaintiff's Background section].")

Plaintiff filed the instant action in this court on March 27, 2023, alleging that Defendant's actions violated section 401(e) (Count I) and section 401(c) (Count II) of Title IV of the LMRDA, 29 U.S.C. §§ 481(c), (e).  (ECF No. 1.)  Defendant answered the Complaint on May 26, 2023. (ECF No. 5.)  In their Initial Joint Status Report, filed June 27, 2023, the parties notified the court that Plaintiff intended to file the present Motion.  (ECF No. 9.)  Two months later, on August 25, 2023, Plaintiff filed the Motion through which Plaintiff seeks entry of judgment and an order from the court declaring and vacating Defendant's election for the offices of President and Trustee as void, and directing Defendant to conduct a new election for those offices under Plaintiff's supervision and in accordance with controlling legal authority.  Plaintiff also seeks an award of costs pursuant to 28 U.S.C. § 2412 (a)(2).  (ECF No. 13-1 at p. 15-16; ECF No. 1 at p. 8-9.)  At the time Plaintiff filed the Motion, the parties had not yet commenced discovery.  (ECF No. 14 at p. 8.)  The parties subsequently requested, and the court granted, a stay of the fact discovery deadline pending resolution of the Motion.  (ECF Nos. 18, 19.)

3

## II. LEGAL STANDARD

Plaintiff moves for judgment under Federal Rule of Civil Procedure 12(c), or, in the alternative, for summary judgment under Rule 56. "A motion with this caption implicates the court's discretion under Fed. R. Civ. P. 12(d)." *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022). Federal Rule of Civil Procedure 12(d) provides, "[i]f, on a motion under [Rule 12(c)], matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). "Pursuant to Rule 12(d), the Court has discretion to determine whether to accept evidence outside the pleadings, and thus convert a [Rule 12(c)] motion to a Rule 56 motion." *Coleman v. Calvert Cnty.*, No. GJH-15-920, 2016 WL 5335477, at *3 (D. Md. Sept. 22, 2016) (citations omitted).

"There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). "First, all parties must 'be given some indication by the court that it is treating the [Rule 12(c)] motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material outside the pleadings is before the court.'" *Snyder,* 2022 WL 980395, at *4 (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). Second, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177.

Where, as here, the court need not consider materials outside of the pleadings and discovery had not yet commenced at the time of the filing of the Motion, the court declines to convert the Motion, thus construing the Motion as one for judgment on the pleadings.

4

### A. Rule 12(c): Motion for Judgment on the Pleadings

A party may move for judgment on the pleadings after the pleadings are closed, so long as the motion is made early enough so as not to delay trial. FED. R. CIV. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standard applicable to motions to dismiss under Rule 12(b)(6)." *Green v. Sw. Credit Sys., L.P.*, 220 F. Supp. 3d 623, 624 (D. Md. 2016) (citing *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009)). A Rule 12(c) motion thus, like a Rule 12(b)(6) motion, does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Accordingly, in considering a Rule 12(c) motion, the court "assume[s] all well-pled facts to be true and draw[s] all reasonable inferences in favor of" the non-moving party. *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 702 (4th Cir. 2016). "A motion for judgment on the pleadings pursuant to Rule 12(c), . . . should not be granted unless it appears to a certainty that the non-moving party cannot prove any set of facts in support of its claim that would entitle it to relief." *United States v. Castillo*, No. 8:19-CV-3459-PWG, 2021 WL 825974, at *3 (D. Md. Mar. 4, 2021) (citing *Shooting Point, L.L.C. v. Cumming*, 238 F. Supp. 2d 729, 735 (E.D. Va. 2002), *aff'd*, 368 F.3d 379 (4th Cir. 2004)).

### III.  ANALYSIS

Plaintiff seeks judgment on the pleadings that Defendant (1) violated Section 401(e) of the LMRDA when it failed to mail its members notice of the new voting times at all locations and of the new voting procedures at the White Oak worksite; and (2) violated Section 401(c) of the LMRDA when it permitted two members to walk the ballot box around the White Oak worksite during on the day of the election. (ECF No. 1 ¶¶ 59–64.) Plaintiff contends that because Defendant

admits to the relevant underlying facts—namely, that (i) the polls opened prior to the time designated in the election notice sent to members, (ii) members walked the ballot box around the White Oak worksite, and (iii) Defendant failed to send a corrected notice regarding the change to poll hours or use of a roaming ballot box at the White Oak worksite—Plaintiff is entitled to judgment as a matter of law that Defendant violated the LMRDA. (ECF No. 13-1 at p. 2–4; ECF No. 5 ¶¶ 25, 28–32, 36–38.)

Title IV of the LMRDA "regulates the procedures that labor unions must follow when conducting elections." *Hugler v. Loc. 689, Amalgamated Transit Union*, 266 F. Supp. 3d 855, 860–61 (D. Md. 2017). "Title IV's special function in furthering the overall goals of the LMRDA is to insure 'free and democratic' elections." *Wirtz v. Local 153, Glass Bottle Blowers Ass'n.*, 389 U.S. 463, 470 (1968). If, upon a preponderance of the evidence after a trial upon the merits, the court finds . . . that the violation of [29 U.S.C. § 481] may have affected the outcome of an election, the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization." 29 U.S.C. § 482(c)(2). Thus, to establish that she is entitled to the relief requested, Plaintiff must show for each alleged violation: "(1) that the union's conduct constitutes a statutory violation, and (2) that the violation 'may have affected the outcome' of the election." *Hugler v. Loc. 689, Amalgamated Transit Union*, 266 F. Supp. 3d 855, 861 (D. Md. 2017) (citations omitted).

Where the court concludes that Plaintiff has established a violation Title IV of the LMRDA, Plaintiff "enjoys the benefit of a presumption that the outcome of the challenged election may have been affected." *Id.* (citing *Chao v. Loc. 54, Hotel Emps. & Rest. Emps. Int'l Union*, 166 F. Supp. 2d 109, 112–13 (D.N.J. 2001)). "[P]roof of a violation establishes a prima facie case that the

outcome of the election may have been affected and shifts the burden to the defendant to show that the established violation did not affect the election results." *Id.* (citations omitted). *See Acosta v. Loc. 41, Int'l Bhd. of Teamsters*, No. 4:18-CV-00381-HFS, 2020 WL 11563944, at *4 (W.D. Mo. Feb. 10, 2020) (explaining that "[e]ffect is presumed from a violation unless the union meets its evidentiary burden to produce 'tangible evidence' that the election would not have been different absent the violation."); *Acosta v. Loc. 101, Transp. Workers Union of Am. AFL-CIO*, 339 F. Supp. 3d 80, 90 (E.D.N.Y. 2018) (instructing that "[i]f the Secretary establishes proof of a violation, the burden shifts to the defendant to show that the established violation did not affect the election results. A union can rebut the presumption [that the violation may have affected the election's outcome] only with specific evidence.") (citations omitted); *Chao v. N. Jersey Area Loc. Postal Workers Union, AFL-CIO*, 211 F. Supp. 2d 543, 552 (D.N.J. 2002) (instructing that "[the defendant] has the burden of proof to show that the violation did not affect the election's outcome."); *Loc. 54*, 166 F. Supp. 2d at 113 (reiterating that "[p]roof of a violation establishes a prima facie case that the outcome of the election may have been affected and shifts the burden to the defendant to show that the established violation did not affect the election results.").

Therefore, even were the court to find that Plaintiff has met her burden to establish a *prima facie* case that Defendant violated sections 401(e) and 401(c) of Title IV the LMRDA, the burden then shifts to Defendant to show with specific evidence that the violations did not affect the election results. Here, Defendant denies Plaintiff's allegations that the alleged LMRDA violations "may have affected the [election] outcome." (ECF No. 5 ¶¶ 61, 64.) As set forth above, the parties (in accordance with their joint request for a stay) had not engaged in any discovery as of the filing of the Motion.[1] (ECF No. 14 at p. 8.) Drawing all inferences in favor of the non-moving party,

---

[1] Plaintiff's assertion that Defendant has been on notice of the alleged violations prior to Plaintiff's involvement and the subsequent initiation of this action, and, thus, could have conducted its own factfinding is well-taken. (ECF No.

7

and considering that the parties have not had any opportunity for discovery prior to the filing of the Motion, Plaintiff has not met her burden to demonstrate "to a certainty" that Defendant "cannot prove any set of facts" in support of its defense. *See Castillo*, No. 2021 WL 825974, at *3, *supra*. Judgment at this stage would be premature.

IV.     **CONCLUSION**

For the reasons set forth herein, by separate order, the Motion (ECF No. 13) will be DENIED.

/S/

February 21, 2024

_____
Julie R. Rubin
United States District Judge

---

16 at p. 14–15.)  At this stage of the litigation, however, the court is obliged to draw all reasonable inferences in the non-moving party's favor; and, here, Defendant is entitled to discovery on the claims and defenses at issue in order to meet its burden.