## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JULIE A. SU, Acting Secretary of the          *
United States Department of Labor,
                                              *
    *Plaintiff*,
                                              *
    v.                                              Civil No. 23-836-JRR
                                              *
PROTECTIVE SERVICE OFFICERS
UNITED,                                       *

    *Defendant.*                              *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## STIPULATION OF FACTS

1.      At the time of the Election, Defendant's members were employed as security officers by two companies: Triple Canopy and Allied Universal Services.

2.      At the time of the Election, Defendant's members worked at three worksites: the White Oak campus of the U.S. Food and Drug Administration ("FDA White Oak") worksite; the Federal Emergency Management Agency ("FEMA") worksite; and the United States Citizenship and Immigration Service ("USCIS") worksite.

3.      At the time of the Election, Defendant had over 200 members working at the FDA White Oak worksite.

4.      At the time of the Election, Defendant had approximately 36 members working at the FEMA worksite.

5.      At the time of the Election, Defendant had approximately 42 members working at the USCIS worksite.

6.      Defendant conducted a polling site election of officers on September 30, 2022.

7.      The Bylaws are attached as Exhibit A to this stipulation.

8.      Defendant distributed an Election Notice to its members on September 11, 2022 (the "Election Notice").

9.      The Election Notice, attached as Exhibit B, stated that voting would occur at three locations: (1) the White Oak Library, located at 11701 New Hampshire Ave in Silver Spring, Maryland; (2) the FEMA Caucus Conference Room, located at 500 C Street in Washington, DC; and (3) the USCIS offices, located at 5600 Capital Gateway Drive in Camp Springs, Maryland.

10.     The Election Notice further stated that the voting hours for all locations would be from 10:30 a.m. to 4:30 p.m.

11.     In the 2022 Election, there were polling sites onsite or within walking distance at the FEMA and USCIS worksite locations.

12.     The polling site for the FDA White Oak worksite was moved to the White Oak Library because the FDA now prohibited Defendant from holding its election onsite.

13.     The White Oak Library is approximately 1.2 miles from FDA White Oak worksite.

14.     After the Election Notices were posted, members and candidates complained that the voting hours would were not sufficiently long to permit them to vote.

15.     Members working during the first and second "relief" shifts at the FDA White Oak worksite were particularly concerned that they would not be able to vote during the posted voting times given the distance to the library and the fact that they would be on duty for the entire polling period indicated in the Election Notice.

16.     At some point between September 27, 2022 and September 30, 2022, PSOU President Chrissandra Jones ("Jones") agreed to have member Ervin Covington ("Covington") carry the ballot box (referred to as "the roaming ballot box") around to individual guard stations at the FDA White Oak worksite beginning around 4 a.m. on the day of the Election.

17.    Jones explained this decision to the candidates and stated that FDA security management had given the Union permission to walk the ballot box around the site as long as it did not cause a gathering of on duty security officers in a public area and did not disrupt the security operation.

18.    Jones then called all the Union's Executive Board members individually, told them of the expanded voting opportunities, and asked them to spread the word around the membership.

19.    After that, the executive board decided that there could be no more changes because the discussions and desire to satisfy everyone was causing confusion among the membership.

20.    Around this same time, Jones also told Cirilo Smith (a member who was not running in the election and who had volunteered to oversee balloting at the CIS site where he worked) that he could open voting at 8 a.m. on election day at the USCIS worksite.

21.    Around this same time, Jones also told Rashunda Kelly (a member who was not running in the election and who had volunteered to oversee balloting for the FEMA site where she worked) that she could open voting at 6 a.m. on election day at the FEMA worksite.

22.    Jones thought that it would not have been fair to let members vote at White Oak via the roaming ballot box prior to the time stated on the Election Notice and not have the other polling sites open early, as well.

23.    Defendant did not provide written notice to its members that Covington would be walking the ballot box around the FDA White Oak worksite on the day of the Election.

24.    Defendant did not provide written notice to its members that the polls would be open earlier than the times stated in the Election Notice at all voting locations.

25.    On the day of the Election, the polls, including the roaming ballot box at FDA White Oak, at all three voting sites opened prior to 10:30 a.m.

26. On the day of the Election, Covington and another member, Adrian Petrus ("Petrus"), walked the ballot box to individual guard stations at the FDA White Oak worksite starting between 5:00 a.m. and 6:00 a.m. on September 30, 2022.

27. Covington and Petrus cannot attest that they took the box to every eligible voter who was at the FDA White Oak worksite during that time period.

28. After Covington and Petrus walked around with the ballot box, Covington took the box to Building 22 on the FDA White Oak worksite around 8:30 a.m., where he stayed with the box until about 9:30 a.m.

29. Members would have only learned that Covington was with the ballot box at Building 22 through word of mouth.

30. Covington then brought the box to the White Oak Library, where voting resumed at around 11:00 a.m.

31. The ballot box was walked to individual guard stations during the first and second shifts at the FDA White Oak worksite, but not during the third shift.

32. Various members were not given the option of voting at their guard station while on duty, including (but not limited to) those members working during the third shift at guard stations at the FDA White Oak worksite and at other worksites. If those members wanted to cast a vote, they had to do so at the Library.

33. Seventy-four members cast votes onsite at the FDA White Oak worksite through the roaming ballot box that Covington and Petrus walked around during the first and second shift.

34. Twenty-one members cast votes at the White Oak Library, the voting location that had been designated in the Election Notice.

35. Twenty-four members cast votes at the FEMA worksite.

36.    Eighteen members cast votes at the USCIS worksite.

37.    The contested races in the Election were for the offices of President and three Trustee positions.

38.    The margin of victory in the President's race was 11 votes.

39.    The margin of victory in the Trustees' race was 10 votes.

40.    Approximately 400 members were eligible to vote at the time of the Election.

41.    The voter participation rate was higher among those members working during the first and second shift at the FDA White Oak worksite than the voter participation rate among those members working at other worksites.

42.    The voter participation rate was also higher among those members working during the first and second shift at the FDA White Oak worksite than the voter participation rate among those members working during the third shift at the FDA White Oak worksite.

43.    There were 136 votes counted as cast in the Election.

44.    Under Section 8(D)(2) of the PSOU bylaws, the Union Executive Board has the authority to employ absentee balloting without membership approval.

45.    Absentee balloting was not made available in the 2022 Election.

46.    Section 8(G)(2) of the PSOU bylaws states that post-election protests concerning the conduct of the election must be submitted to the PSOU Executive Board via the Treasurer within 72 hours of the election.

47.    By letter to the PSOU Executive Board, dated October 3, 2022, Gregory protested the Defendant's September 30, 2022 Election of officers.

48.    Gregory's allegation that PSOU failed to notify members of the change in voting hours and location from what was stated in the Election Notice was timely filed with PSOU.

49.     Gregory's allegation that PSOU improperly allowed Covington and Petrus to walk the ballot box around the FDA White Oak worksite was timely filed with PSOU.

50.     At the time Gregory protested the Election, she was a member in good standing of PSOU.

51.     Defendant did not respond to Gregory's protest within three calendar months.

52.     Having exhausted remedies available without obtaining a final decision within three calendar months after their invocation, Gregory filed a timely complaint with the Secretary of Labor on January 11, 2023, within the one calendar month required by section 402(a)(2) of the Act, *see* 29 U.S.C. § 482(a)(2).

53.     Gregory's complaint is properly before the Secretary of Labor under section 402(a)(2) of the Act, *see* 29 U.S.C. § 482(a)(2).

54.     By letter signed February 22, 2023, the Defendant's attorney agreed the time within which the Plaintiff may bring suit with respect to the Defendant's aforesaid election shall be extended to March 27, 2023.

55.     Plaintiff filed this action on March 27, 2023 and it is now properly before this Court.