# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**LORI CHAVEZ-DEREMER, Secretary of the U.S. Department of Labor,**

*Plaintiff,*

**v.**

**PROTECTIVE SERVICE OFFICERS UNITED,**

*Defendant.*

Civil No.: 1:23-cv-00836-JRR

## <u>MEMORANDUM OPINION</u>

Plaintiff Lori Chavez-DeRemer,[1] Secretary of the United States Department of Labor (the "Secretary" and "DOL," respectively), initiated this action alleging that Defendant Protective Service Officers United violated Title IV of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 481–83. Pending before the court is the Secretary's Motion for Summary Judgment. (ECF No. 39; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be granted.

## I.    BACKGROUND

The Secretary initiated this action against Defendant, an independent, local labor organization, on March 27, 2023. (ECF No. 1 ¶ 7; ECF No. 5 ¶ 7.) The Secretary's claims arise from Defendant's September 30, 2022, election of union officers for the offices of president and three trustees (the "Election"). (ECF No. 1 ¶ 1; ECF No. 39-2 ¶ 6.) In particular, the Secretary contends Defendant violated section 401(e) (Count I) and section 401(c) (Count II) of Title IV of

---

[1] Lori Chavez-DeRemer was sworn in as the Secretary for the U.S. Department of Labor on March 11, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), Madam Clerk shall substitute Lori Chavez-DeRemer for Julie A. Su as Plaintiff in this action.

the LMRDA, 29 U.S.C. §§ 481(c), (e).  (ECF No. 1.)  Following an answer and initial scheduling

order, the Secretary moved for judgment on the pleadings.  (ECF No. 13.)  The court denied the

motion as premature based upon Defendant's representation that there were material factual

disputes that needed to be resolved by way of discovery.[2]  (ECF No. 21.)  After the close of

discovery, the Secretary moved for summary judgment, which Defendant opposes.  (ECF Nos. 39,

40.)

## II.    UNDISPUTED FACTS

The court incorporates the parties' Stipulation of Facts (ECF No. 39-2) as follows:

1. At the time of the Election, Defendant's members were employed as security officers by two companies: Triple Canopy and Allied Universal Services.

2. At the time of the Election, Defendant's members worked at three worksites: the White Oak campus of the U.S. Food and Drug Administration ("FDA White Oak") worksite; the Federal Emergency Management Agency ("FEMA") worksite; and the United States Citizenship and Immigration Service ("USCIS") worksite.

3. At the time of the Election, Defendant had over 200 members working at the FDA White Oak worksite.

4. At the time of the Election, Defendant had approximately 36 members working at the FEMA worksite.

5. At the time of the Election, Defendant had approximately 42 members working at the USCIS worksite.

6. Defendant conducted a polling site election of officers on September 30, 2022.

7. . . .

8. Defendant distributed an Election Notice to its members on September 11, 2022 (the "Election Notice").

---

[2] Notwithstanding this representation, the Secretary represents to the court that Defendant engaged in no affirmative discovery related to the claims asserted.  (ECF No. 39-1 at p. 4.)

9. The Election Notice . . . stated that voting would occur at three locations: (1) the White Oak Library, located at 11701 New Hampshire Ave in Silver Spring, Maryland; (2) the FEMA Caucus Conference Room, located at 500 C Street in Washington, DC; and (3) the USCIS offices, located at 5600 Capital Gateway Drive in Camp Springs, Maryland.

10. The Election Notice further stated that the voting hours for all locations would be from 10:30 a.m. to 4:30 p.m.

11. In the 2022 Election, there were polling sites onsite or within walking distance at the FEMA and USCIS worksite locations.

12. The polling site for the FDA White Oak worksite was moved to the White Oak Library because the FDA now prohibited Defendant from holding its election onsite.

13. The White Oak Library is approximately 1.2 miles from FDA White Oak worksite.

14. After the Election Notices were posted, members and candidates complained that the voting hours would [sic] were not sufficiently long to permit them to vote.

15. Members working during the first and second "relief" shifts at the FDA White Oak worksite were particularly concerned that they would not be able to vote during the posted voting times given the distance to the library and the fact that they would be on duty for the entire polling period indicated in the Election Notice.

16. At some point between September 27, 2022 and September 30, 2022, PSOU President Chrissandra Jones ("Jones") agreed to have member Ervin Covington ("Covington") carry the ballot box (referred to as "the roaming ballot box") around to individual guard stations at the FDA White Oak worksite beginning around 4 a.m. on the day of the Election.

17. Jones explained this decision to the candidates and stated that FDA security management had given the Union permission to walk the ballot box around the site as long as it did not cause a gathering of on duty security officers in a public area and did not disrupt the security operation.

18. Jones then called all the Union's Executive Board members individually, told them of the expanded voting opportunities, and asked them to spread the word around the membership.

19. After that, the executive board decided that there could be no more changes because the discussions and desire to satisfy everyone was causing confusion among the membership.

20. Around this same time, Jones also told Cirilo Smith (a member who was not running in the election and who had volunteered to oversee balloting at the CIS site where he worked) that he could open voting at 8 a.m. on election day at the USCIS worksite.

21. Around this same time, Jones also told Rashunda Kelly (a member who was not running in the election and who had volunteered to oversee balloting for the FEMA site where she worked) that she could open voting at 6 a.m. on election day at the FEMA worksite.

22. Jones thought that it would not have been fair to let members vote at White Oak via the roaming ballot box prior to the time stated on the Election Notice and not have the other polling sites open early, as well.

23. Defendant did not provide written notice to its members that Covington would be walking the ballot box around the FDA White Oak worksite on the day of the Election.

24. Defendant did not provide written notice to its members that the polls would be open earlier than the times stated in the Election Notice at all voting locations.

25. On the day of the Election, the polls, including the roaming ballot box at FDA White Oak, at all three voting sites opened prior to 10:30 a.m.

26. On the day of the Election, Covington and another member, Adrian Petrus ("Petrus"), walked the ballot box to individual guard stations at the FDA White Oak worksite starting between 5:00 a.m. and 6:00 a.m. on September 30, 2022.

27. Covington and Petrus cannot attest that they took the box to every eligible voter who was at the FDA White Oak worksite during that time period.

28. After Covington and Petrus walked around with the ballot box, Covington took the box to Building 22 on the FDA White Oak worksite around 8:30 a.m., where he stayed with the box until about 9:30 a.m.

29. Members would have only learned that Covington was with the ballot box at Building 22 through word of mouth.

30. Covington then brought the box to the White Oak Library, where voting resumed at around 11:00 a.m.

31. The ballot box was walked to individual guard stations during the first and second shifts at the FDA White Oak worksite, but not during the third shift.

32. Various members were not given the option of voting at their guard station while on duty, including (but not limited to) those members working during the third shift at guard stations at the FDA White Oak worksite and at other worksites. If those members wanted to cast a vote, they had to do so at the Library.

33. Seventy-four members cast votes onsite at the FDA White Oak worksite through the roaming ballot box that Covington and Petrus walked around during the first and second shift.

34. Twenty-one members cast votes at the White Oak Library, the voting location that had been designated in the Election Notice.

35. Twenty-four members cast votes at the FEMA worksite.

36. Eighteen members cast votes at the USCIS worksite.

37. The contested races in the Election were for the offices of President and three Trustee positions.

38. The margin of victory in the President's race was 11 votes.

39. The margin of victory in the Trustees' race was 10 votes.

40. Approximately 400 members were eligible to vote at the time of the Election.

41. The voter participation rate was higher among those members working during the first and second shift at the FDA White Oak worksite than the voter participation rate among those members working at other worksites.

42. The voter participation rate was also higher among those members working during the first and second shift at the FDA White Oak worksite than the voter participation rate among those members working during the third shift at the FDA White Oak worksite.

43. There were 136 votes counted as cast in the Election.

(Stip. of Facts, ECF No. 39-2 ¶¶ 1–43.)

## III.  <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id*. at 249.  Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."  *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted); *see Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 780 (4th Cir. 2023) (providing that "plaintiffs need to present more than their own unsupported speculation and conclusory allegations to survive").

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Indeed, it is the function of the factfinder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014).

## IV.   ANALYSIS

The Secretary seeks summary judgment that Defendant (1) violated section 401(e) of the LMRDA when it failed to notify its members of the new voting times at all locations and of the new voting procedures at the White Oak worksite; and (2) violated Section 401(c) of the LMRDA when it "us[ed] an unannounced, unregulated, and unevenly deployed roaming ballot box during the election." (ECF No. 39-1 at pp. 12–17.)

As explained previously, Title IV of the LMRDA "regulates the procedures that labor unions must follow when conducting elections." *Hugler v. Loc. 689, Amalgamated Transit Union*, 266 F. Supp. 3d 855, 860–61 (D. Md. 2017). "Title IV's special function in furthering the overall goals of the LMRDA is to insure 'free and democratic' elections." *Wirtz v. Local 153, Glass Bottle Blowers Ass'n.*, 389 U.S. 463, 470 (1968). The legislative history of Title IV "shows that Congress weighed how best to legislate against revealed abuses in union elections without departing needlessly from its long-standing policy against unnecessary governmental intrusion into internal union affairs." *Id.* at 470–71.

To establish that entitlement to the relief requested, the Secretary must show for each alleged violation: "(1) that the union's conduct constitutes a statutory violation, and (2) that the violation 'may have affected the outcome' of the election." *Loc. 689*, 266 F. Supp. 3d at 861 (citations omitted). Where a court concludes that "the violation of [29 U.S.C. § 481] may have affected the outcome of an election, [it] shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization."[3] 29 U.S.C. § 482(c)(2).

Where the court concludes that the Secretary has established a violation of Title IV of the LMRDA, she "enjoys the benefit of a presumption that the outcome of the challenged election may have been affected." *Loc. 689*, 266 F. Supp. 3d at 861 (quoting *Chao v. Loc. 54, Hotel Emps. & Rest. Emps. Int'l Union*, 166 F. Supp. 2d 109, 112–13 (D.N.J. 2001)). "[P]roof of a violation establishes a prima facie case that the outcome of the election may have been affected and shifts the burden to the defendant to show that the established violation did not affect the election results." *Id.* (citations omitted); *see Acosta v. Loc. 41, Int'l Bhd. of Teamsters*, No. 4:18-CV-00381-HFS, 2020 WL 11563944, at \*4 (W.D. Mo. Feb. 10, 2020) (same); *Acosta v. Loc. 101, Transp. Workers Union of Am. AFL-CIO*, 339 F. Supp. 3d 80, 90 (E.D.N.Y. 2018) (same) (citations omitted); *Chao v. N. Jersey Area Loc. Postal Workers Union, AFL-CIO*, 211 F. Supp. 2d 543, 552 (D.N.J. 2002) (same); *Loc. 54*, 166 F. Supp. 2d at 113 (same).

---

[3] While the language of 29 U.S.C. § 482 contemplates a finding after a trial on the merits, "[t]he language is not to be read literally and summary judgment lies in a proper case." *Usery v. Int'l Org. of Masters, Mates & Pilots, Int'l Mar. Div., ILA, AFL-CIO*, 538 F.2d 946, 949 n.5 (2d Cir. 1976); *see Brennan v. Loc. Union No. 639, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 494 F.2d 1092, 1096 (D.C. Cir. 1974) (holding that "[t]here is no indication that the Congress in using this language intended to make inapplicable to such actions Rule 56 of the Federal Rules of Civil Procedure providing for summary judgment," and noting "[i]f there are no material facts which are contested it would be sheer folly to require the expense and delay of a trial when other methods of resolution are available"). *See also, e.g., Perez v. Branch 504, Nat'l Ass'n of Letter Carriers*, No. CIV 15-391 WJ/KK, 2016 WL 7494291, at \*6 (D.N.M. Mar. 22, 2016) (recognizing same); *Acosta v. Loc. 101, Transp. Workers Union of Am. AFL-CIO*, 339 F. Supp. 3d 80, 89 (E.D.N.Y. 2018) (recognizing same); *Chao v. Loc. 538 of United Food & Com. Workers Int'l Union AFL CIO*, 307 F. Supp. 2d 1027, 1030 (W.D. Wis. 2004) (recognizing same).

In response to this point, Defendant concedes it is unable to rebut the presumption, explaining that "it is virtually impossible to provide tangible evidence to show that any such violations did not affect the outcome of the election." (ECF No. 40 at p. 1.) Defendant offers no evidence or argument to rebut the presumption that any alleged violation may have affected the Election. Accordingly, whether Defendant violated sections 401(e) and 401(c) of the LMRDA is dispositive.

## A. Violation of Section 401(e)[4]

The Secretary first argues she is entitled to summary judgment as to her claim that Defendant violated section 401(e) by failing to notify its members of the changes to the timing and method of voting. (ECF No. 39-1 at pp. 12–14.) Section 401(e) of the LMRDA governs notice of elections and the eligibility to vote. 29 U.S.C. § 481(e); *Hugler v. Loc. 689, Amalgamated Transit Union*, 266 F. Supp. 3d 855, 857 (D. Md. 2017). It provides in part: "Not less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address." 29 U.S.C. § 481(e). While non-binding,[5] the DOL regulation interpreting this provision states: "The notice must include a specification of the date, time and place of the election and of the offices to be filled, and it must be in such form as to be reasonably calculated to inform the members of the impending election." 29 C.F.R. § 452.99. Moreover, "[s]hould a union change the date of an election from the date originally announced in the mail notice to the members, it

---

[4] In its opposition, Defendant requests dismissal of Count I because, it asserts, the facts demonstrate Defendant's compliance with section 401(a) notice requirements. (ECF No. 40 at p. 9.) Defendant has filed no motion to dismiss or cross motion for summary judgment; it also has not argued why dismissal would be the proper remedy. In any event, the court will deny Defendant's request for the reasons set forth herein.

[5] The parties agree that the applicable regulations are persuasive but not binding on this court. The court similarly finds DOL regulations persuasive in interpreting the claims here against the backdrop of the caselaw interpreting same. Of course, "[t]he correctness of an interpretation can be determined finally and authoritatively only by the courts." 29 C.F.R. § 452.1(b); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024) (explaining that it "remains the responsibility of the court to decide whether the law means what the agency says" (quoting *Perez v. Mortgage Bankers Assn.*, 575 U.S. 92, 109 (2015) (Scalia, J., concurring in judgment)).

must mail a second notice, containing the corrected date, at least fifteen days before the election."
29 C.F.R. § 452.104(b).

As set forth above, the following facts are undisputed: Defendant distributed the Election Notice to its members on September 11, 2022, in advance of the September 30, 2022, Election. (Stip. of Facts, ECF No. 39-2 ¶ 8.)  The Election Notice alerts members to a "Walk-In Election" on September 30, 2022, from 10:30 a.m. to 4:30 p.m. at three different locations: the FDA White Oak Library; the FEMA Caucus Conference Room; and the USCIS office at 5600 Capital Gateway Drive in Room 1S370.  (Election Notice, ECF No. 39-4.)  Upon receiving complaints that the voting hours were insufficient, Defendant's President decided to have a member carry the ballot box around to individual guard stations at FDA White Oak worksite starting around 4:00 a.m. on the day of the Election – effectively operating as a roaming ballot box.  (Stip. of Facts, ECF No. 39-2 ¶ 16.)  As to the remaining worksites, Jones told members at the USCIS and FEMA worksites they "could open voting" at 8:00 a.m. and 6:00 a.m., respectively, on Election day.  *Id.* ¶¶ 20–21. On the day of the Election, all three sites opened before 10:30 a.m., the time stated on the Election Notice.  *Id.* ¶ 25.  The determination to expand the voting times and employ the roaming ballot box occurred sometime between September 27 and September 30, 2022.  *Id.* ¶¶ 16–21.  While Defendant's President asked Executive Board members "to spread the word around the membership" of the expanded voting opportunities, Defendant failed to provide written notice of the updated voting options.  *Id.* ¶ 18.  In total, 136 votes were cast; approximately 400 members were eligible to vote.  *Id.* ¶¶ 40, 43.

The Secretary avers that Defendant violated section 401(e) by failing to provide notice as prescribed by the above-recited regulations.  (ECF No. 39-1 at p. 12–14.)  Defendant counters that section 401(e) does not require a union to provide notice solely to enlarge voting hours for an

election already noticed; but Defendant ignores the plain language of the statute (and applicable regulations) and asks the court to read into it an exception that does not exist. (ECF No. 40 at p. 9–12.) At bottom, it is undisputed that Defendant did not provide written notice of the expanded voting hours (at White Oak, USCIS, and FEMA) and voting method (at White Oak). In view of the plain language of the statute and applicable persuasive regulations, as well as interpretive caselaw and the purpose of the LMRDA, the court is persuaded this failure effected a violation of section 401(e).

On this point, the *Wirtz v. Local Union 262, Glass Bottle Blowers Association of U. S. & Canada* is persuasive:

> Notice of the challenged 1965 election was sent to the members without mention of the availability of absentee voting. Absentee voting had been permitted in the union's previous elections and a notice to that effect had been posted on a bulletin board before the 1962 election. No steps were taken to advise members that absentee ballots would be available in the 1965 election. As a result, some members were aware of the availability of absentee voting and many others were not. The Court holds that failure to inform all the members of the availability of absentee voting was a violation of Section 401(e) of the Act. Although the Act does not require that absentee voting be allowed, once the union made it available, notice of its availability was required within the meaning of Section 401(e) of the Act.

290 F. Supp. 965, 968 (N.D. Cal. 1968). As in *Local Union 262*, the issue here relates to the failure to advise members of the available voting mechanisms—namely, the additional times and the roaming ballot box.

Defendant attempts to distinguish *Local Union 262*[6] as follows: "Context strongly suggests leadership knew absentee voting would be available, and the court found it was a section 401(e)

---

[6] To the extent Defendant contends the decision in *Local Union 262*, a "district court case from fifty-six years ago," is an outlier, the court is not persuaded. As Defendant concedes, there is limited caselaw interpreting what notice is in this context; and Defendant offers virtually no authority to support disregarding *Local Union 262*. (ECF No. 40 at p. 2.)

violation to fail to inform members of that presently known fact.  For the case at bar, the Union fully intended to do precisely what the notice described and nothing more, until it became clear that the membership demanded a change." (ECF No. 40 at pp. 13–14.)   True or not, the *Local Union 262* court did not expressly engage such facts in reaching its conclusion; instead, it explained that members were not advised of the availability of absentee ballots and "failure to inform all the members of the availability of absentee voting was a violation of Section 401(e)." *Loc. Union 262*, 290 F. Supp. at 968.

Further, Defendant's argument about the presence of bad faith (perhaps) at issue in *Local Union 262* is well-taken but not persuasive.  That neither the Secretary nor the undisputed facts suggest bad faith on Defendant's part is of no moment to the court's analysis, as "[t]he 'reasonableness of a union's conduct' is not a defense," and a violation of LMRDA does not "require a showing of bad faith or ill motive."  *See Loc. 689*, 266 F. Supp. 3d at 861–62 (first quoting *Chao v. Local 54, Hotel Employees & Rest. Employees Int'l Union*, 166 F. Supp. 2d 109, 112–14 (D.N.J. 2001); then quoting *Solis v. Local 9477*, 798 F. Supp. 2d 701, 704–705 (D. Md. 2011)).

As in *Local Union 262*, the court is persuaded that Defendant's failure to inform members of the additional voting times and the roaming ballot box constitutes a violation of Section 401(e). Well-intentioned or not, the result of Defendant's last-minute decision to enlarge voting times and add a roaming ballot box resulted in additional opportunities to vote that were not set forth in a written notice to Defendant's members, which, in addition to violating the plain language of the statute and applicable persuasive regulations, also frustrates the LMRDA's purpose described above.

Defendant also argues that 29 C.F.R. 452.104 demonstrates that its actions were not contrary to the requirement of section 401(e). In particular, Defendant argues:

> The Secretary's regulations are not written to "mandate" a union to do anything if it seeks only to add more time on the same date, despite the Secretary's opening argument to the contrary. . . . There appears to be no regulation governing a change in time, much less the addition of time. Because the regulation is so specific on this point but says nothing about adding time on the appointed day of the election, it is fair to conclude that adding time does not run afoul. Given this, the Union's Election Notice was more than adequate.

(ECF No. 40 at pp. 9–10.) The court does not read 29 C.F.R. 452.104 to demonstrate that a union need not provide notice of all voting times, as well as voting methods and locations; such a reading would be contrary to 29 C.F.R. § 452.99 and interpretive caselaw. It also would appear to frustrate the purpose of Title IV of the LMRDA to insure free and democratic elections by, relevant here, ensuring members know when they can vote, where, and by what means. The time, location, and manner of an Election are all material aspects of such section 401(e) notice.

Based on the undisputed material facts set forth above and the applicable law, Defendant's failure to provide notice to its members of the complete Election voting times and methods violated section 401(e) as a matter of law. As Defendant concedes it cannot rebut the presumption regarding any resultant effect such violation had on the Election, the Secretary is entitled to summary judgment on Count I.

## B. Violation of Section 401(c)

The Secretary next argues she is entitled to summary judgment as to her claim that Defendant violated the fairness principle of section 401(c). Section 401(c) of the LMRDA provides in part: "Adequate safeguards to insure a fair election shall be provided, including the right of any candidate to have an observer at the polls and at the counting of the ballots." 29 U.S.C. § 481(c). This "general mandate" exists within "[a] labor organization's wide range of discretion

regarding the conduct of elections is thus circumscribed by a general rule of fairness." 29 C.F.R. § 452.110(a). The interpretive regulations provide examples of conduct that would violate this general mandate of fairness, such as permitting only one candidate to have his or her nickname on the ballot, or failing to provide adequate voting instructions to voters. *Id.* § 452.110(a), (b). "The inclusion of these mechanical procedural safeguards as examples of the required safeguards suggests that the Secretary, like Congress, construed the adequate safeguards provision narrowly." *Brock v. Writers Guild of Am., W., Inc.*, 762 F.2d 1349, 1357 (9th Cir. 1985); *see Solis v. Amalgamated Transit Union, Loc. 1005*, 638 F.3d 956, 958–59 (8th Cir. 2011) (citing *Brock* and explaining that it is adequate, not perfect, notice that is required).

Beyond the specific examples noted in the regulation, caselaw provides guidance on actions that violate the section 401(c)'s general fairness mandate. Courts have found that actions that affect the voting procedure itself may run afoul of this fairness mandate. *See, e.g.*, *Acosta v. Loc. 41, Int'l Bhd. of Teamsters*, No. 4:18-CV-00381-HFS, 2020 WL 11563944, at *3–4 (W.D. Mo. Feb. 10, 2020) (granting summary judgment where defendant failed to ensure members were able to return their voted ballots due to issues with return envelopes); *McLaughlin v. Loc. Union 1000, Civ. Serv. Emps. Ass'n, Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO*, No. 87-CV-94, 1988 WL 28987, at *2 (N.D.N.Y. Mar. 28, 1988) (concluding members were denied an opportunity to cast meaningful votes where union inadvertently included space for write-in candidates and would rerun the election only where the number of write-in votes equaled or exceeded the difference in votes between candidates); *Wirtz v. Loc. Union 262, Glass Bottle Blowers Ass'n of U. S. & Canada*, 290 F. Supp. 965, 966–67 (N.D. Cal. 1968) (holding that defendant violated 29 U.S.C. § 481(c) where use of absentee ballots lacked adequate safeguards regarding distribution, handling, and counting). *Cf. Acosta v. Ass'n of Pro. Flight Attendants*, No.

4:16-CV-1057-A, 2017 WL 4326094, at *3 (N.D. Tex. Sept. 26, 2017) (holding "[t]hat defendant cannot or will not provide observers with a means of insuring that votes are accurately recorded and tallied does not excuse its compliance with § 481(c)"); *Dole v. Loc. Union 317*, 711 F. Supp. 577, 581 (M.D. Ala. 1989) (holding defendant violated 29 U.S.C. § 481(c) where it "disqualif[ied] voters in the election for failure to comply with technical requirements, while at the same time fail[ed] to provide instructions on how to meet such requirements"); *Marshall v. Loc. 468, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 643 F.2d 575, 577 (9th Cir. 1980) (holding that an abrupt change in balloting procedure violated 39 U.S.C. § 281(c) as it affected candidates' ability to conduct meaningful campaigns).

By way of further example, and of particular relevance here, the Sixth Circuit decided *Brock v. District 6, United Mine Workers of America*, against the following backdrop of facts:

> The election notice mailed to members of Local 9922 listed the candidates and stated, in full:
>
>> The regularly scheduled District Election will be held on December 9, 1980 at the job sites and the Shenandoah Truck Stop. Voting hours will be from 6:30 a.m. to 9:00 p.m.
>
> In fact, voting from 6:30 a.m. to 9:00 p.m. was possible only at the permanent voting site named and three job sites. The 'floating ballot box' was used for the remainder. The box was not taken to sites where no work was taking place. At two sites, closed for inclement weather, impromptu polling places were arranged, with workers contacted by phone from company seniority lists.

772 F.2d 905, 1985 WL 13586 at *4 (6th Cir. 1985) (unpublished table decision).

The district court held the notice was reasonably sufficient; the Sixth Circuit disagreed:

> This statement fails to distinguish that the regulation imposes two distinct requirements on the Union—the regulation requires that the notice be in such form as to reasonably inform the members of the impending election, which this notice does, <u>and</u> that the notice

specify the date, time and place of the election. This the notice failed to do.

While use of a 'floating ballot box' is not unreasonable in appropriate circumstances, see 29 C.F.R. § 452.929, we hold that in the instant case adequate notice would have to include the following information at a minimum, as a matter of law: a statement that a 'floating ballot box' will be employed, which will be at specific job sites for indeterminate and very limited periods of time, and an advisement to members intending to vote at a job site other than one at which they work that they should plan on voting at a permanent site; and a further statement that in case of a job site shut down for inclement weather, an alternative voting site may be arranged, and workers should contact a designated person such as their union steward to learn if such an arrangement has been made.

.        .        .

A notice that disenfranchises even a few voters violates the Act, even if it does not affect the outcome of the election, although should the latter fact be proven the remedy may be something short of ordering a new election. See Wirtz v. Hotel Employees Union, Local 6, 391 U.S. 492, 506–08 (1968) (once violation is proven, burden shifts to union to present evidence that violation did not affect outcome of election). In this case, the contested election was decided by a margin of 20 votes. Since no proof was offered by the union respecting whether the effect of the notice on non-voting members affected the outcome of the election, we reverse the District Court on this issue as well.

*Id.* at *4–5 (emphasis in original).

The question here is whether the undisputed facts of Defendant's unannounced used of the roaming ballot box with no notice of the times and locations it would be employed constitutes a violation of section 401(c) based on its effect on voting procedure. Again, it is undisputed that the only notice members may have had of the unannounced roaming ballot box and times of its availability was by word of mouth. (ECF No. 39-2 ¶ 27.) Like in *District 6*, the issue is that of adequacy of the notice—members did not have written notice of a roaming ballot box, let alone of

the times or location where the roaming ballot box would be available to them should they seek to utilize it.

Against this backdrop, the court is persuaded that Defendant violated the general mandate of fairness under section 401(c). The court appreciates that Defendant's intention may very well have been to respond to (and cure) members' complaints about voting opportunities; that notwithstanding, the resulting patchwork response left members without full information about their voting options, thereby (presumptively) disenfranchising those members who may not have learned of the additional voting opportunities by the *ad hoc*, word of mouth method, and therefore lost their chance to cast a vote. As Defendant acknowledges, the court's inquiry is concerned with voter disenfranchisement; the "potential disenfranchisement" of members is particularly profound here where (as Defendant concedes) the last minute changes were implemented in direct response to significant complaints about the insufficiency of voting hours. (ECF No. 40 at p. 11 n.2.)

In view of the foregoing and the undisputed material facts, the court finds there is no triable issue as to whether Defendant violated section 401(e); as a matter of law, it did. As Defendant again concedes it cannot rebut the presumption that the violation may have affected the Election, (ECF No. 40 at p. 1), the Secretary is entitled to summary judgment on Count II.[7]

## V.    CONCLUSION

For the reasons set forth herein, by separate order, the Motion (ECF No. 39) will be granted. The court will declare the Election void and order Defendant to conduct a new election under the Secretary's supervision.

---

[7] Defendant contends that a fact-intensive inquiry is required and summary judgment is therefore not appropriate. The court disagrees. The material, probative facts are undisputed; the limited case law is instructive. The court's evaluation does not require weighing evidence or making credibility assessments; and the court has done neither.

/S/

May 20, 2024

_____

Julie R. Rubin
United States District Judge